UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

STEPHEN A. MITCHELL,

                    Plaintiff,                    Case No. 1:23-cv-315

v.                                     Honorable Jane M. Beckering

MARGARET OUELLETTE et al.,

                    Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

       Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues LCF nurses Margaret Ouellette, Mary Schultz, Unknown Mikel, Unknown MacIntosh, and Unknown Peter.

Plaintiff alleges that outside doctor Eric Stockall, M.D., diagnosed Plaintiff with Benign Prostatic Hyperplasia. (Compl., ECF No. 1, PageID.2.) On November 3, 2022, Dr. Stockall performed a prostatic urethral lift. Dr. Stockall placed a catheter. Plaintiff reports that Dr. Stockall told Plaintiff the catheter should be removed after one day to avoid infection. Plaintiff attaches Dr. Stockall's operative report to the complaint. The report states: "a Foley catheter . . . was placed . . . . The patient will have his Foley catheter left in for 1 day and to be removed at the facility." (ECF No. 1-1, PageID.11.)

Plaintiff states that the next day, November 4, 2022, he "went back and forward to health care trying to get someone to remove[] his Catheter . . . ." (ECF No. 1, PageID.2.) Plaintiff alleges that he did not receive any help from the nurses named as defendants in the complaint. He claims that the nurses did not follow Dr. Stockall's order and an infection resulted.

The catheter remained in for 14 days. It was removed by Dr. Stockall at a follow-up appointment. (*Id.*, PageID.3; ECF No. 1-1, PageID.10.)

Plaintiff claims that the five nurses were: deliberately indifferent to Plaintiff's serious medical need; discriminated against him because of a disability, in violation of the Americans with Disabilities Act (ADA); intentionally caused Plaintiff mental and emotional distress; violated the Rehabilitation Act (RA); were grossly negligent; and violated state law by intentionally inflicting emotional harm and distress. Plaintiff seeks compensatory damages in the amount of $25,000.00 and punitive damages in the amount of $100,000.00.

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional or federal statutory right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.     Eighth Amendment

Plaintiff's claim that the nurses were deliberately indifferent to Plaintiff's alleged serious medical need implicates the protections of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The amendment imposes a constitutional limitation on the power of the states to punish. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). Accordingly, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

### 1.     Objective Component

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v.*

4

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

## 2.  Subjective Component

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

5

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).

Moreover, "the right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis amounted only to negligence given that the prisoner also complained of symptoms "which could have been consistent with [the doctor's] diagnosis"). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 3.    Plaintiff's Allegations

Plaintiff alleges, in a conclusory fashion, that the Defendants "violated Federal law, by their deliberate indifference . . . ." (Compl., ECF No. 1, PageID.3.) But the only facts that he alleges to support this conclusory assertion are as follows:

> Plaintiff went back and forward to health care trying to get someone to remove[] his Catheter on 11/4/22. However, The Plaintiff did not receive any help from the nurses that's in this complaint.

(*Id.*, PageID.2 (capitalization in original).) Plaintiff suggests that the nurses' failures to help him were improper because Dr. Stockall had placed in his report that "[t]he patient will have his Foley catheter left in for 1 day and to be removed at the facility." (Operative Report, ECF No. 1-1, PageID.11.) But there are no facts alleged to show that the named Defendants were aware of that

report or even authorized to perform the removal. Further, there are no facts alleged about Plaintiff's interactions with any of the named Defendants. Indeed, there are no facts alleged to indicate that Plaintiff even spoke with the nurses or, if he did, what he said. The only allegation is a conclusory assertion that Plaintiff went to health care and did not receive any help from these five nurses on November 4, 2022. That is not sufficient to support an inference that each of the nurses named as Defendants knew Plaintiff was subject to a substantial risk of serious harm or that the nurses consciously disregarded that risk. *Cf. Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' [or nurses] does not support a reasonable inference that each Defendant is liable . . . ." (citation omitted)); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, Plaintiff's allegations fall short on the objective prong as well. Plaintiff states only that he went to health care on November 4, the day after his surgery. It is not clear that removal of the catheter was even called for by Dr. Stockall's report at the times that Plaintiff showed up in the health care department on November 4. As days passed, one might infer that the need to remove a catheter rose to the level of a serious medical need, but Plaintiff alleges no *facts* to support an inference that removal of the catheter on November 4 was necessary to remedy a serious medical need. *See Iqbal*, 556 U.S. at 678–79 (discussing that conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim). Furthermore, Plaintiff alleges no facts to suggest that the named Defendants had any involvement in the matter after November 4. *See Boxill*, 935 F.3d at 518 ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with

8

particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

For all of these reasons, Plaintiff has failed to state an Eighth Amendment claim for deliberate indifference to a serious medical need.

### B.      ADA and RA Claims

Plaintiff's ADA claim consists, in its entirety, of the following allegation:

> [Defendants'] actions violated Federal law, by their discriminatory act of excluding Plaintiff from receiving the benefits of medical treatment, based on his disability as set forth in this complaint.

(Compl., ECF No. 1, PageID.3 (emphasis omitted).) Plaintiff's RA claim is likewise lacking in detail:

> [Defendants'] actions violated Federal law, pursuant to the rehabilitation act of 1973 (29 USC § 794a), as set forth in this complaint.

(*Id*., PageID.4 (capitalization in original).)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, § 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

9

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity.[1] *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendant nurses in their official and individual capacities.[2] Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly

---

[1] A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity; in this case, it is the MDOC or the State of Michigan. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

[2] Page 1 of Plaintiff's complaint ends with ¶3. Page 2 begins with ¶10. In ¶10, Plaintiff identifies Defendant Mary Schultz. He notes that he is suing her "in her individual and her official capacity[ies]." (Compl., ECF No. 1, PageID.2.) Logic suggests that the missing paragraphs include parallel allegations with regard to the other four Defendants. The Court presumes Plaintiff is suing all five nurses in their respective individual and official capacities.

abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, as an initial matter, Plaintiff has failed to allege sufficient facts to show that he has a disability pursuant to the ADA or the RA. *See* 42 U.S.C. § 12102(2); *see also* 29 U.S.C. § 794(a). Moreover, even assuming Plaintiff had alleged sufficient facts to show that he has a disability pursuant to the ADA and the RA, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability.

As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction

necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2]

In summary, Plaintiff's conclusory allegations of an ADA violation and an RA violation without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's ADA and RA claims will be dismissed.

### C.    State Law Claims

All of Plaintiff's remaining claims appear to be based on state law, (Compl., ECF No. 1, PageID.4): (1) causing Plaintiff mental and emotional distress[3] (*id.*, ¶ 21); (2) gross negligence (*id.*, ¶ 23); and (3) causing Plaintiff intentional infliction of emotional harm and distress (*id.*, ¶ 24). Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

[3] Plaintiff suggests that mental and emotional distress is compensable under federal law. It may be an element of recovery under § 1983 under certain circumstances. 42 U.S.C. § 1997e(e). The only federal laws he identifies are § 1983, the ADA, and the RA. For the reasons set forth herein, Plaintiff has failed to state any claims under those statutes. Accordingly, the Court will consider his claims for mental and emotional stress as if they were also brought under state law.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

13

A judgment consistent with this opinion will be entered.


Dated:   <u>   May 19, 2023   </u>           <u>   /s/ Jane M. Beckering   </u>
                                                       Jane M. Beckering
                                                       United States District Judge